**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JOHN DOE, JAMES DOE, JOSEPH DOE, and JANE DOE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EMERSON HOSPITAL,

Defendant.

Case No.: 1:25-cv-13631-RGS

**EMERSON HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice forthcoming*)
Tara D. Kennedy (*pro hac vice forthcoming*)
Avery M. Epstein (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF ALLEGATIONS AND FACTS .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. Plaintiffs' Claims Fail Because They Do Not Satisfy Basic Pleading Standards. .......... 5

A. The Second Amended Complaint Lacks Allegations About Plaintiffs' Own Experience Sufficient to Support Any Alleged Disclosure of PII or PHI. .......... 5

B. Plaintiffs' Allegations Regarding Emerson's "Patient Portals" are Wholly Conclusory and Therefore Insufficient to Support Any of Their Claims. .......... 6

C. Plaintiffs' Allegations Regarding the Public Website Do Not Implicate PHI. .......... 7

II. Plaintiffs Fail To State A Claim Under The ECPA (Count I). .......... 8

A. Plaintiffs Have Not Alleged An Unlawful Interception and the Crime-Tort Exception Does Not Apply. .......... 9

1. Plaintiffs do not plausibly allege a criminal or tortious purpose. .......... 10

2. Plaintiffs expressly allege a permissible purpose. .......... 12

3. Plaintiffs do not allege a "separate and independent" crime or tort. .......... 13

B. Plaintiffs Have Not Alleged that Emerson Intercepted "Contents." .......... 14

III. Plaintiffs Fail to Allege a Chapter 93A Claim (Count VI). .......... 15

A. Chapter 93A Does Not Apply to Emerson as a Non-Profit Organization. .......... 15

B. Plaintiffs Have Not Alleged Any Unfair or Deceptive Conduct. .......... 16

C. Plaintiffs Have Not Alleged Causally Related Injury or Damage. .......... 17

D. Plaintiffs Never Served a Compliant Demand Letter. .......... 17

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*All Seasons Servs., Inc. v. Commr. of Health and Hosps. of Boston*,
620 N.E.2d 778 (Mass. 1993) ....................16, 17

*Am. Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................2, 7, 8

*Am. Hosp. Ass'n v. Becerra*,
No. 24-10775 (5th Cir. Sept. 4, 2024) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................13

*Casavant v. Norwegian Cruise Line Ltd.*,
460 Mass. 500 (2011) ....................18

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................15

*Coulsey v. Option One Mortgage Corp.*,
2018 WL 6344195 (D. Mass. Aug. 27, 2018) ....................17, 18

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................10

*Da Silva v. U.S. Bank, N.A.*,
885 F. Supp. 2d 500 (D. Mass. 2012)....................18

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................11, 14

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*,
2025 WL 2807673 (D. Mass. Sep. 30, 2025) .................... *passim*

*Doe v. Partners Healthcare Sys. Inc.*,
No. 1984CV01651-BLS1 (Mass. Super.)....................16

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024)....................8

*Engren v. Johnson & Johnson, Inc.*,
2021 WL 4255296 (D. Mass. Sept. 17, 2021) ....................17

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025), *appeal filed* No. 25-1672 (1st Cir. July 23, 2025) ....................11, 12, 13, 14

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)....................9

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................6

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................13, 14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................14

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................8

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................9

*Linkage Corp. v. Trustees of Boston Univ.*,
679 N.E.2d 191 (Mass. 1997) ....................16

*McManus v. Tufts Med. Ctr., Inc.*,
2025 WL 2778025 (D. Mass. Sept. 29, 2025) ....................11, 13

*Mulder v. Kohl's Dep't Stores, Inc.*,
865 F.3d 17 (1st Cir. 2017)....................15

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................14

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................6, 7

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1 (1st Cir. 2011)....................5

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................14

*Piper v. Talbots, Inc.*,
507 F. Supp. 3d 339 (D. Mass. 2020) ....................3

*Planned Parenthood Fed'n of Am. Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................10

*Rafferty v. Merck & Co., Inc.*,
92 N.E.3d 1205 (Mass. 2018) ....................15

*Shedd v. Sturdy Mem'l. Hosp., Inc.*,
2022 WL 1102524 (Mass. Super. Apr. 5, 2022) ....................16

*Small Justice LLC v. Xcentric Ventures LLC*,
873 F.3d 313 (1st Cir. 2017) ....................17

*Trustees of Boston Univ. v. AMS Comm'ns, Inc.*,
33 F. Supp. 2d 66 (D. Mass. 1998) ....................16

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) ....................10

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998) ....................12

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................10, 11

*Vita v. Blue Cross & Blue Shield of Mass.*,
Case No. 25-10420-LTS, Doc. No. 26 (D. Mass. Oct. 17, 2025) ....................5

*Vita v. New England Baptist Hospital*,
243 N.E.3d 1185 (Mass. 2024) ....................3

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ....................8

*Wood v. City of Haverhill*,
2024 WL 4189932 (D. Mass. Sept. 13, 2024) ....................9

**Statutes**

18 U.S.C. § 2510(8) ....................14

18 U.S.C. § 2511 ....................9, 10

18 U.S.C. §2520 ....................9

M.G.L. c. 93A .................... *passim*

M.G.L. c. 93A, §2(a) ........ 16

M.G.L. c. 93A, § 9(3) ........ 15, 18

M.G.L. c. 214, § 1B ........ 4

**Other Authorities**

Fed. R. Civ. P. 9(b) ........ 15

Fed. R. Evid. 201(c) ........ 3

## INTRODUCTION

Throughout the country, plaintiffs have filed hundreds of putative class actions attempting to collect massive damages awards from non-profit healthcare providers for using common website analytics tools on their public websites. When a user visits a website that contains these tools, information about the visit can potentially be sent to the entity that provides the technology—such as Meta or Google—which then uses the data to allow the website provider to analyze website interactions and assist with advertising. These analytics tools are ubiquitous and used by countless healthcare entities, businesses, and even government agencies to improve functionality and advertising on their websites.

Defendant Emerson Hospital (Emerson) is a non-profit hospital that offers a range of community healthcare services in Massachusetts. It operates a public website that is available to patients and non-patients alike, and a patient portal. The Plaintiffs in this case, John Doe, James Doe, Joseph Doe, and Jane Doe, allege that when they visited Emerson's public website and patient portals, analytics tools ("AdTech") caused their browser to send personal identifiable information (PII) or protected health information (PHI) to Meta and Google. According to Plaintiffs, Emerson's use of AdTech resulted in criminal disclosure of information protected under HIPAA, which they allege supports claims under the Electronic Communications Privacy Act ("ECPA") and state and common law claims.

Plaintiffs' Second Amended Complaint ("SAC") suffers from a variety of defects, but two cut across all claims. First, the SAC is devoid of basic factual support. Despite consisting of 78 pages and 328 paragraphs, it says almost nothing about the Plaintiffs' experience on Emerson's website or portal. Instead, Plaintiffs rely on generic discussions of how Meta or Google's technology *might* work or what a patient *might* do on Emerson's website, but never link those

allegations to their own specific activities or data. Second, it is well established that information on a healthcare provider's public website does not qualify as PHI under HIPAA. *See, e.g.*, *Am. Hosp. Ass'n. v. Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024) (vacating 2022 Bulletin issued by the Department of Health and Human Services and holding browsing activity on a public website "does not and cannot identify an individual or the individual's PHI"). As a result of these pleading deficiencies, each of Plaintiffs' claims fail.

Setting aside these pleading deficiencies, Plaintiffs' claims also fail as a matter of law. Notably, Plaintiffs have no viable claim under the ECPA, a one-party consent statute, because they fail to plausibly allege that the sole exception—the crime-tort exception—applies. To invoke that exception, Plaintiffs must plausibly allege that Emerson's primary motivation for intercepting their data was to commit a crime or tort—in other words, that Emerson's purpose in using AdTech was to harm its patients. Instead, Plaintiffs simply claim that Emerson acted to improve website efficiency and to promote advertising, neither of which qualifies as a criminal or tortious purpose. Nor do Plaintiffs allege a tortious or criminal act *independent* of any alleged data transmission, as they must for the crime-tort exception to apply.

Plaintiffs' Chapter 93A claim also cannot survive a motion to dismiss because as a nonprofit organization, Emerson cannot be held liable under that statute, and Plaintiffs otherwise fail to adequately allege the elements of such a claim. For these reasons, as further explained below, the SAC should be dismissed in its entirety with prejudice.

## <u>STATEMENT OF ALLEGATIONS AND FACTS</u>

Emerson is a non-profit charitable healthcare organization[1] that offers a range of healthcare services throughout Massachusetts. SAC ¶ 7. It operates a public website (during the relevant time

[1] The Court may take judicial notice of Emerson's non-profit status because it is "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; [and]

period, https://www.emersonhospital.org[2]) that is available to patients or anyone else with internet access, as well as a password-protected patient portal. *See, e.g.*, SAC ¶ 14–17. Emerson's website provides general information about Emerson and "tools to seek treatment, such as finding a doctor, researching services and treatments, paying bills, and learning about Defendant's services." *Id.* ¶ 27. Plaintiffs allege Emerson installed AdTech on its website, which caused information about their web-browsing to be disclosed to third parties like Google and Meta. *Id.* ¶ 5. Plaintiffs also vaguely allege that Emerson embedded AdTech on its patient portal and "inside of its Epic mobile application" referred to as the "Patient Gateway" portal. *Id.* Notably absent from the SAC is the fact that the Patient Gateway portal is operated and provided by a separate third-party entity, Mass General Brigham ("MGB"), *not* Emerson.[3]

The original Plaintiff filed his Complaint against Emerson more than three years ago in Essex County Superior Court, alleging as his lead claim that Emerson's use of AdTech on its website violated the Massachusetts Wiretap Act. After the Supreme Judicial Court of Massachusetts rejected that theory in *Vita v. New England Baptist Hospital*, 243 N.E.3d 1185

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(c); *see also Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) (rule applicable at motion to dismiss stage). Here, the Secretary of State of the Commonwealth and Attorney General maintain records of non-profits in Massachusetts, with Emerson's non-profit status listed on both sources. *See* SEC. OF THE COMMONWEALTH OF MASS., CORPORATIONS DIV., *Search for a Business Entity*, https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx (last visited Dec. 29, 2025) (result for "Emerson Health System, Inc.", Emerson Hospital's parent corporation, attached as Ex. A); MASS. OFFICE OF THE ATT'Y GEN., *Public Charities Filing Search*, https://masscharities.my.site.com/FilingSearch/s/ (last visited Dec. 29, 2025) (result for "Emerson Health System, Inc." attached as Ex. B).

[2] Emerson launched a new website in March 2025, https://emersonhealth.org.

[3] *See* https://emersonhealth.org/patient-portal/? (last visited Dec. 29, 2025) ("You will see Mass General Brigham's logo in Patient Gateway. Emerson Health remains independent, but as an affiliate of Mass General Brigham, we are fortunate to use their medical record system, Epic, and benefit from having access to the same electronic medical record system."). The Court may take judicial notice of this fact provided on Emerson's current website because Plaintiffs rely on the website throughout the SAC and its "accuracy cannot reasonably be questioned." *See Piper*, 507 F. Supp. 3d at 343.

(Mass. 2024), Plaintiffs, now including three additional anonymous purported Emerson patients, responded by filing the SAC, which contains new allegations (including about patient portals), abandons their state wiretap claim, and alleges for the first time that Emerson's use of AdTech violated ECPA and M.G.L. c. 93A ("Chapter 93A"), in addition to repleading claims for invasion of privacy under M.G.L. c. 214, § 1B, breach of fiduciary duty and/or duty of confidentiality, breach of implied contract, and unjust enrichment.

The bulk of Plaintiffs' Complaint provides a general description of how AdTech might operate along with hypothetical scenarios about how an individual *could* interact with Emerson's website. *See, e.g.*, SAC ¶¶ 31–148. When it comes to their *own* interactions, Plaintiffs have very little to say. The allegations about Plaintiffs are limited to one short paragraph each, where they allege they are Emerson patients, have accessed Emerson's website and portals, their medical conditions, and at indeterminate times have used Emerson's website or patient portal to search for information about doctors and treatments, complete forms, view medical records, pay medical bills, and schedule appointments. *Id.* ¶¶ 14–17. Plaintiffs do not allege any specific facts regarding any actual information of theirs they contend was transmitted to third parties or that they ever received any targeted advertisements as a result of their actions on Emerson's website or portal.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).[4] A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "Where a complaint pleads facts that are

[4] Unless otherwise noted, all emphases in citations have been added, and internal quotation marks and citations have been removed.

'merely consistent with' a defendant's liability, it stops short of . . . plausibility of entitlement to relief." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

## ARGUMENT

### I. Plaintiffs' Claims Fail Because They Do Not Satisfy Basic Pleading Standards.

#### A. The Second Amended Complaint Lacks Allegations About Plaintiffs' Own Experience Sufficient to Support Any Alleged Disclosure of PII or PHI.

The core assertion underlying all of Plaintiffs' claims is that when they used Emerson's website or portals, their PII or PHI was disclosed to third parties. Yet, despite its 78 pages, the SAC lacks basic factual support about Plaintiffs' experiences on Emerson's website. As discussed above, Plaintiffs offer only generic descriptions of their activities on Emerson's website *or* patient portals (without distinguishing between the two) and then claim those generic activities "resulted in the disclosure of [their PHI] to third parties." SAC ¶¶ 14–17. Plaintiffs do not allege what they specifically did on Emerson's website beyond generically saying they ran searches related to treatment for their medical conditions or looked at doctor information; when they did it; or what particular information any third party purportedly received. Plaintiffs do not even allege whether they visited the few specific parts of Emerson's website they later describe or what they did on those pages. *See id.* ¶¶ 143–65. Simply naming their medical conditions, without alleging whether those conditions were ever disclosed, or how, is insufficient to support any of Plaintiffs' claims.

Courts in this circuit and others have held that similarly vague allegations and broad references to PHI are insufficient to state a claim. For example, Judge Sorokin in this district dismissed a similar complaint where the plaintiff failed to "to make sufficient factual allegations about her own use of the [defendant's] website to state any claim." *Vita v. Blue Cross & Blue Shield of Mass.*, Case No. 25-10420-LTS, Doc. No. 26 (D. Mass. Oct. 17, 2025) (attached as Ex. C). Although the court noted in passing that the earlier complaint in this matter was found

sufficient by the Superior Court of Massachusetts, in light of more recent precedent the SAC plainly fails to provide sufficient facts to *plausibly* allege that any of the medical conditions Plaintiffs vaguely reference were disclosed to third parties. *See also Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (dismissing ECPA claim where plaintiff alleged she used defendant's website to "find a specific physician, to research treatments, including information related to an MRI test" and more); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) (*Nienaber I*) (two sentences describing "actual engagement" with website insufficient). Plaintiffs' failure to provide facts showing disclosure of their PII or PHI supports dismissal of each of their claims.

### B. Plaintiffs' Allegations Regarding Emerson's "Patient Portals" are Wholly Conclusory and Therefore Insufficient to Support Any of Their Claims.

To the extent Plaintiffs intend to rely on allegations relating to Emerson's patient portal or the MGB Patient Gateway portal, the allegations in the Complaint are likewise too conclusory to support any claim. As to Emerson's patient portal, Plaintiffs say almost nothing; they reference Emerson's patient portal in passing without alleging where it is located, what type of AdTech is alleged to be embedded or where in the portal, nor how the Plaintiffs accessed or used the portal. *See* SAC ¶¶ 5, 14–17, 25, 28. Simply put, the allegations as to *Emerson's* portal are so sparse it is impossible to ascertain the nature of any claim premised on Plaintiffs' purported use of that portal.

As to MGB's Patient Gateway portal, as noted above, Emerson's website makes clear that the portal is provided and operated by MGB, and Emerson is merely granted access for certain patients as an affiliate. Thus, the allegation that Emerson controls the portal is undermined by Emerson's website, which Plaintiffs cite throughout the SAC. Regardless, Plaintiffs' allegations fall short. Plaintiffs merely allege that they accessed MGB's Epic mobile application (SAC ¶¶ 15–17) and that Emerson installed Firebase Code, without ever explaining what Firebase Code is or

how it shares information with third parties (*id.* ¶¶ 18, 30, 56, 168). They again offer no allegations about how AdTech is alleged to have operated on the MGB portal, on what pages, nor how they used the portal. These allegations are insufficient. *See Nienaber I.*, 733 F. Supp. 3d at 1083 (dismissing claims where plaintiff said nothing "as to the type of information she provided . . . through [the portal] or that Defendant transmitted Private Information *of hers* to third parties").

Accordingly, to the extent Plaintiffs intend to rely on allegations regarding AdTech in any patient portal, those allegations are wholly insufficient and should be rejected outright.

### C. Plaintiffs' Allegations Regarding the Public Website Do Not Implicate PHI.

Furthermore, each of Plaintiffs' claims is based on a false premise: that when people visit Emerson's public website, their PII or PHI is disclosed to third parties. This categorical assertion is wrong as a matter of law. Plaintiffs base their theory on the premise that disclosure of public browsing information combined with an IP address can constitute PHI, but portions of a December 2022 Bulletin issued by the Department of Health and Human Services ("HHS") reaching the same conclusion were vacated in an action against the HHS. There, the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." *Becerra*, 738 F. Supp. 3d at 802.[5] That is because a website operator has no way of knowing why any user visits a particular webpage, or clicks a particular button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated webpage] is unknowable."). For example, a user might visit a hospital website to find information for a family member, a friend, or for a research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available. But whether the browsing relates to healthcare or not, it is not PHI if it takes place on a public website and subjective motive is required to link it to healthcare.

[5] HHS dismissed its appeal in *Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

*See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").

Although Plaintiffs allege that they are patients of Emerson and used Emerson's website to perform searches related to their medical treatment, even if they had performed such a search, Emerson would have no way of knowing that it was Plaintiffs running the search for their own treatment; it could have been any member of the public. For these reasons and others, numerous courts have granted motions to dismiss similar claims after *Becerra*. *See Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing because "disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (plaintiff's "generic search queries" for burn specialists/treatments not PHI). *But see Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 153 (D. Mass. 2024) (pre-*Becerra* decision denying in part motion to dismiss a pixel suit).

Because every one of Plaintiffs' claims are premised on the alleged disclosure of PHI (*see, e.g.*, SAC ¶¶ 239–43, 251–62, 273–74, 285, 290–92, 302, 307–08, 314, 323), and because their Complaint does not adequately allege such a disclosure, Plaintiffs' claims should all be dismissed.[6]

## II. Plaintiffs Fail To State A Claim Under The ECPA (Count I).

Plaintiffs allege Emerson unlawfully "intercepted" their communications with its website in violation of the ECPA when AdTech it installed disclosed the contents of those communications

[6] In acknowledgment of the Superior Court's November 22, 2023 ruling denying Emerson's motion to dismiss Plaintiffs' invasion of privacy and common law claims, Emerson does not re-brief the arguments challenging the merits of those claims set forth in its previous motion to dismiss, but in no way concedes the adequacy of these claims and hereby reserves all rights to challenge the sufficiency of those claims moving forward in this litigation. Emerson further seeks dismissal of those claims for the reasons set forth *supra* in section I.

to Meta and Google. SAC ¶¶ 228–47. The ECPA is a criminal statute, which imposes criminal liability upon one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication," or who intentionally "discloses" or "uses" the contents of an intercepted communication." 18 U.S.C. § 2511(1)(a)-(d). It also provides for civil liability when an "electronic communication [was] intercepted, disclosed, or intentionally used in violation of" the statute's other provisions. *Id.* § 2520(a). As a matter of law then, Plaintiffs' theory cannot support a civil claim unless the same conduct also supports a federal felony charge.[7]

Thus, to state a civil ECPA claim, Plaintiffs must allege facts demonstrating Emerson "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Wood v. City of Haverhill*, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024). Plaintiffs' ECPA claim should be dismissed because they cannot satisfy the first, second, or third elements.

### A. Plaintiffs Have Not Alleged An Unlawful Interception and the Crime-Tort Exception Does Not Apply.

The ECPA is a one-party consent statute and expressly provides that "[i]t shall not be unlawful" for a person to intercept a communication "where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). It is undisputed that Emerson was a party to the communications here (SAC ¶ 238) so no interception occurred. In an effort to avoid this fact,

---

[7] Plaintiffs' theory therefore urges the absurd result that any person involved in the intentional use of ubiquitous AdTech on a healthcare website may face felony charges under the ECPA. In construing the statute, the Court must avoid this type of absurd result. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (interpretation producing absurd result to be avoided). Moreover, and further requiring narrow construction, because the ECPA imposes criminal penalties, under the rule of lenity any ambiguities in the statute must be resolved in Emerson's favor. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (rule of lenity applies to civil claims arising out of criminal statutes). For further discussion on application of the rule of lenity, Emerson directs the Court to the amicus brief filed by The Chamber of Commerce of the United States of America, recently filed in a similar healthcare pixel matter, attached as Ex. D.

Plaintiffs invoke the "crime-tort exception." *Id.* ¶¶ 237–44. The crime-tort exception must be narrowly construed. *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013); *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014). To invoke the exception, Plaintiffs must plausibly allege Emerson (1) acted ***with the purpose*** to commit (2) an independent crime or tort, separate from the interception itself. *See* 18 U.S.C. § 2511(2)(d); *Planned Parenthood Fed'n of Am. Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022). Plaintiffs fail to allege either element.

**1. Plaintiffs do not plausibly allege a criminal or tortious purpose.**

In analyzing whether the crime-tort exception applies, the Court's inquiry can start and stop with the statute's language. Under the ECPA, the interception must be done *intentionally*, 18 U.S.C. § 2511(1)(a). But for the crime-tort exception to apply, there is a separate and additional mens rea requirement—that the interception be done "*for the purpose of committing* any criminal or tortious act." *Id.* § 2511(2)(d). Congress's repeated use of "intentionally" in § 2511(1)(a)–(d), evidences its deliberate choice to then use "purpose" in § 2511(2)(d). *See Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *10, *16 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025). As the Supreme Court explained, "[p]urpose is the most culpable" mental state "and the hardest to prove" requiring that one "consciously desires" a result. *Id.* at *10 (citing *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023).

Thus, to invoke the crime-tort exception, Plaintiffs must allege that Emerson's purpose in deploying AdTech was to commit a crime or tort, not just that its actions had a criminal or tortious effect. Courts in this district have applied this construction and *Lawrence General Hospital* is particularly instructive. There, Magistrate Judge Levenson explained: "[T]he goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort. It is not enough that a crime or tort was a mere side-effect of the interception. . . . Had Congress meant to authorize criminal prosecutions based on a standard lower than actual, conscious

'purpose' it could have done so. It could have used language that focused on criminal or tortious *results* or *effects*." 2025 WL 2808055, at *11–12. Additionally, for the exception to apply, committing a crime or tort must be the "primary motivation" or a "determinative factor" behind the defendant's actions. *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025), *appeal filed* No. 25-1672 (1st Cir. July 23, 2025); *McHugh*, 57 F. Supp. 3d at 100 (exception "properly confined to situations" where the interceptor "intended to harm" the other party "through blackmail, threats or public embarrassment").

The question here then is whether Plaintiffs adequately allege that Emerson's *purpose* or primary motivation in using AdTech was to commit a crime or tort. The answer is plainly no. Plaintiffs breezily allege that Emerson intercepted their communications "for purposes of committing criminal and tortious acts" namely, violating HIPAA, invading their privacy, and breaching its duty of confidentiality. SAC ¶ 239. But they offer no support, and instead simply allege Emerson knew its actions would violate HIPAA. That is insufficient. *See Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) ("recitation of the elements that [defendant's] purpose was tortious or criminal, without alleging any facts—independent of the interception itself—that it was done for a criminal or tortious purpose, will not do").

Even if Emerson's conduct violated HIPAA or some other law or common law theory (which it did not), Plaintiffs have not alleged any facts to support that Emerson had an unlawful *purpose* beyond what was accomplished by the collection of their data—and that is what matters under the crime-tort exception. *See* SAC ¶¶ 5, 166, 176, 193, 307, 323; *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose."). Plaintiffs ignore the critical distinction between a party's purpose

and the mere effect of its action, with only the former triggering the crime-tort exception. *See Lawrence Gen. Hosp.*, 2025 WL 2808055 at *17 (dismissing complaint in similar matter where complaint failed "to plausibly support an inference that [defendant hospital's] purpose in deploying the web tracking tools was anything other than the usual reason why website operators use such tools: to help run their websites"); *Cape Cod*, 2025 WL 1745732, at *4 (dismissing complaint with "no factual allegations . . . from which the court could conclude that CCHC, a non-profit hospital system, installed [AdTech] with the 'primary motivation' of knowingly committing a violation of HIPAA or perpetrating a tort"); *United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting "superficial logic" that "because the recording itself was made in violation of state law, it was made for the purpose of violating" law).

**2. Plaintiffs expressly allege a permissible purpose.**

Plaintiffs' apparent theory—that Emerson, a non-profit hospital, collected patient information *for the purpose* of harming patients through a crime or tort—is not only implausible on its face, but also contradicted by their own allegations, *i.e.*, that Emerson used AdTech "for advertising purposes", to "access valuable analytics information," and "to assess the website's functionality and traffic." SAC ¶¶ 5, 134, 166. As many courts have recognized, including in this District, there is nothing unlawful about these types of objectives. *See Lawrence Gen. Hosp.*, 2025 WL 2808055 at *17. Indeed, Judge Burroughs recently dismissed an ECPA claim in a similar matter because allegations that the defendant implemented AdTech for "financial motives," "financial gain," and to "increase revenue from existing patients and gain new patients," were "insufficient to satisfy the crime-tort exception." *Tufts*, 2025 WL 2778025, at *3–4; *see also Cape Cod,* 2025 WL 1745732, at *4 (advertising advantage and enhanced analytics functions "are not the stuff of which a crime-tort is made").

In short, Plaintiffs' allegations at most suggest Emerson's purpose in allegedly intercepting their communications was to improve its services and website and for marketing use, not to violate HIPAA or any other law. Thus, Plaintiffs have not plausibly alleged that Emerson intercepted communications "for the purpose of" committing a crime or tort and this Court should join the rulings in this district dismissing similarly deficient ECPA claims. *See Lawrence Gen. Hosp.*, 2025 WL 2808055, *10–21; *Tufts*, 2025 WL 2778025, at *3–4 (dismissal for "not assert[ing] facts sufficient to support the inference that [defendant] intended to commit a criminal or tortious act or that disclosing private medical information to third parties was the 'primary motivation' or a 'determinative factor'" in decision to use tools); *Cape Cod*, 2025 WL 1745732, at *3–4 (similar).

**3. Plaintiffs do not allege a "separate and independent" crime or tort.**

There is another, distinct, reason that Plaintiffs fail to invoke the crime tort exception: Plaintiffs do not allege any *independent* criminal or tortious conduct beyond the alleged wiretapping itself. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). As numerous courts have held, including in similar contexts, the crime-tort exception is not triggered when the tortious conduct "is the alleged wiretapping itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *see also Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12–14. There must be plausible allegations "that the act of disclosure" was in some respect "separate or independent of the intentional act of deploying the web tracking tools." *Id.* at *13.

Where, as here, the "interception" that provides the basis for the alleged ECPA violation (use of AdTech) is the same act that provides the basis for the purported HIPAA violation or other tort (use of AdTech), there is no independent crime or tort. Indeed, Plaintiffs expressly allege that the purported interception and crime or tort occurred simultaneously or instantaneously. *See* SAC ¶¶ 31, 109, 110, 139, 141, 144, 162, 166, 235. Several courts have recently dismissed ECPA claims in similar tracking technology healthcare cases on this basis. *See, e.g.*, *Cape Cod*, 2025 WL

1745732, at *4 n.3 (HIPAA violation not a "further impropriety" because it was not an act "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *Chestnut Health Sys*, 2025 WL 1616635, at *12 (similar); *Okash v. Essentia Health*, 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025) (similar); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) (similar). Plaintiffs fail to plead a crime or tort independent of the interception itself, and this defect alone is yet another reason why their ECPA claim should be dismissed.

**B. Plaintiffs Have Not Alleged that Emerson Intercepted "Contents."**

Plaintiffs' ECPA claim fails for another reason: they do not plausibly allege facts showing that the "contents" of any "communication" were acquired by any unauthorized party. "Contents" means "information concerning the substance, purport, or meaning" of the communication. 18 U.S.C. § 2510(8). Courts have interpreted contents as referring to "the intended message conveyed by the communication" and not including "record information" such as routing/record information or the name, address, or identity of a customer. *See In re Google Cookie Placement*, 806 F.3d at 135–39; *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014).

At most, Plaintiffs generically claim that Emerson received information about their navigation through a public website and never specify what content was included in those activities. *See, e.g.*, SAC ¶¶ 54, 56, 147–48. Without allegations concerning the actual contents (*i.e.*, PHI) that was allegedly shared, Plaintiffs' claims must be dismissed for failure to plausibly allege an essential element of an ECPA claim. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location . . . Any 'substance' that can flow from these movements must be inferred from the observer, and are therefore not communicative."). Since Plaintiffs have not alleged disclosure of any "contents" their ECPA claim must be dismissed.

**III. Plaintiffs Fail to Allege a Chapter 93A Claim (Count VI).**

Plaintiffs further allege that Emerson's use of AdTech on its website violated M.G.L. c. 93A because such use was an unscrupulous and deceptive act. SAC ¶¶ 319–28. To state a claim under Chapter 93A Plaintiffs must plausibly allege that Emerson: (1) "has committed an unfair or deceptive act or practice;" (2) "the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;'" (3) Plaintiffs "suffered an injury;" and (4) the "unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1222 (Mass. 2018). Plaintiffs must also submit "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." M.G.L. c. 93A, § 9(3). Where, as here, a Chapter 93A claim is premised on alleged misrepresentations, the particularity requirements of Federal Rule of Civil Procedure 9(b) apply, requiring Plaintiff to "specifically plead the time, place, and content" of the misconduct alleged. *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir. 2017). Plaintiffs' claim fails on all fronts.

**A. Chapter 93A Does Not Apply to Emerson as a Non-Profit Organization.**

As a threshold matter, to state a claim under Chapter 93A Plaintiffs must plead that Emerson was engaged in "trade or commerce," *see* M.G.L. c. 93A, §2(a), which they cannot do given Emerson's status as a non-profit (*see supra* pp. 2–3 n.1). A nonprofit "is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" *Trustees of Boston Univ. v. AMS Comm'ns, Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass. 1998); *see also Linkage Corp. v. Trustees of Boston Univ.*, 679 N.E.2d 191, 209 (Mass. 1997) ("In most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission.");

*All Seasons Servs., Inc. v. Commr. of Health and Hosps. of Boston*, 620 N.E.2d 778, 779–80 (Mass. 1993) (similar).

Here, Plaintiffs allege in a single conclusory sentence that Emerson was "engaged in trade or commerce." SAC ¶ 320. The Court need not credit that legal conclusion. Regardless, the SAC's allegations demonstrate that Emerson operated its website, including the use of AdTech, as part of its customary business and that such operations were necessary to meet its purpose of providing healthcare to the community. For example, the SAC alleges that Emerson used AdTech for purposes like assessing the website's "functionality and traffic" (SAC ¶ 134), and for "marketing purposes" *(id.* ¶ 323). Operation of a website and ensuring its functionality, and whether users are able to access it plainly related to Emerson's non-profit purpose. *See Shedd v. Sturdy Mem'l. Hosp., Inc.*, 2022 WL 1102524, at *7 (Mass. Super. Apr. 5, 2022) (Chapter 93A did not apply to hospital data breach, where receiving/retaining PII for billing was part of "core mission of providing health care"); *Doe v. Partners Healthcare Sys. Inc.*, No. 1984CV01651-BLS1, Endorsement on Defs.' Mot. to Dismiss. (Mass. Super., Suffolk Cnty. Dec. 7, 2020) (dismissing 93A claim in healthcare pixel matter "because the informational websites at issue serve the defendant not-for-profits' core mission"); *All Seasons Servs., Inc.*, 620 N.E.2d at 771, 778 (hospital that solicited bids and awarded contracts "for food and vending services at its facility" did not engage in "trade or commerce" because the conduct was "merely incidental to the hospital's primary function of providing medical services")."). Thus, Emerson's conduct is outside the scope of Chapter 93A.

### B. Plaintiffs Have Not Alleged Any Unfair or Deceptive Conduct.

Even if Emerson was subject to Chapter 93A, Plaintiffs' claim still fails because the SAC does not contain particularized allegations that Emerson made any deceptive affirmative representations to Plaintiffs nor that Plaintiffs suffered an injury as a result. Plaintiffs must state with specificity "the time, place, and content of [any] alleged false representation." *Engren v.*

*Johnson & Johnson, Inc.*, 2021 WL 4255296, at *6 (D. Mass. Sept. 17, 2021). Plaintiffs' allegations fail to meet this standard. They vaguely allege that "Defendant tracked and disclosed" PHI to third parties, that Emerson's privacy policy falsely represented it wouldn't use PHI for marketing purposes, and that they would not have used Emerson's website if they had known that representation was false. SAC ¶¶ 323–24. This falls short of describing with specificity *what* Plaintiffs did on Emerson's website, when they visited the website, or what they viewed there, not to mention any details about any of their PHI purportedly being disclosed to a third party. Similarly, Plaintiffs never allege that they read Emerson's Privacy Policy, undermining any position that they relied on its terms. *See, e.g.*, *id.* ¶¶ 170–72.

### C. Plaintiffs Have Not Alleged Causally Related Injury or Damage.

Nor do Plaintiffs allege with specificity any actual identifiable harm or provide a nexus between any alleged injury or loss and the alleged deceptive act, as they must to state a Chapter 93A claim. *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 325 (1st Cir. 2017); *see also Coulsey v. Option One Mortgage Corp.*, 2018 WL 6344195, at *9 (D. Mass. Aug. 27, 2018) ("it is clear that there must be an 'identifiable' harm that goes beyond the deception itself."). Plaintiffs only assert a boilerplate list of harms such as loss of privacy and control over their PHI, disclosure of PHI, diminution in value of PHI, and loss of benefit of the bargain. SAC ¶ 325. But none of the Plaintiffs articulate any facts alleging how Emerson's purported actions caused any economic or non-economic harm beyond the disclosure itself. *See Coulsey*, 2018 WL 6344195, at *10 (dismissing Chapter 93A claim where plaintiff listed only non-tangible harms). Plaintiffs have not alleged any causally-related injury resulting from the alleged Chapter 93A violation.

### D. Plaintiffs Never Served a Compliant Demand Letter.

In addition to the substantive shortcomings of the Chapter 93A claim, the claim also fails because Plaintiffs failed to serve a compliant demand letter. Chapter 93A requires plaintiffs submit

a written demand "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." M.G.L. c. 93A, § 9(3). In the written demand, "[i]t is [] *essential that the complainant define the injury suffered and relief* demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law.'" *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 505 (2011). Plaintiffs' letter—like the SAC—made only conclusory, generic allegations devoid of any specific injuries that Plaintiffs suffered. *See* Ex. E, Plfs.' Chapter 93A Demand Letter; Ex. F, Emerson's Resp. Letter. Indeed, the letter failed to provide even the most basic information about Plaintiffs' alleged interactions with Emerson's website, and merely grouped the Plaintiffs together as a monolith. The deficiency of Plaintiffs' demand letter further compels dismissal of their claim. *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 506 (D. Mass. 2012) (without demand letter stating specific alleged violations, "[p]laintiff cannot proceed with a [93A] claim").

**CONCLUSION**

The Court should dismiss the Second Amended Complaint with prejudice.

Dated: January 7, 2025

Respectfully submitted,

EMERSON HOSPITAL

By: *Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice forthcoming*)
Tara D. Kennedy (*pro hac vice forthcoming*)
Avery M. Epstein (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on January 7, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*Lisa Oliver White*
Lisa Oliver White