**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, JAMES DOE, JOSEPH DOE, and JANE DOE, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No.: 1:25-CV-13631-RGS |
| v. | ) | Leave to File Granted on February 5, 2026 Doc. No. 18 |
| EMERSON HOSPITAL, | ) | |
| Defendant. | ) | |

**DEFENDANT EMERSON HOSPITAL'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs' Allegations Are Insufficient to Support Any of Their Claims, Including Invasion of Privacy, Breach of Fiduciary Duty and/or Common Law Duty of Confidentiality, Breach of Implied Contract, and Unjust Enrichment (Counts II-V) ..... 1

A. Plaintiffs Fail to Explain How Their Allegations Plausibly Support an Inference that Any of Their Own PII or PHI Was Disclosed ..... 1

B. Plaintiffs Cannot Rely on Browsing a Public Website to Support Their Claims ..... 4

C. Plaintiffs' "Portal" Allegations Are Vague and Insufficient ..... 5

II. Plaintiffs Cannot State A Claim Under Chapter 93A (Count VI). ..... 6

A. Emerson Is a Non-Profit That Acted Within its Charitable Purpose ..... 6

B. Plaintiffs Have Failed to Allege an Unfair or Deceptive Act. ..... 9

C. Plaintiffs Fail to Assert Causally Related Injuries or Damages ..... 10

D. Plaintiffs Did Not Serve a Compliant Demand Letter ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Seasons Servs., Inc. v. Commr. of Health and Hosps. of Boston*,
620 N.E.2d 778 (Mass. 1993) ....................8

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................4

*Biszko v. RIHT Fin. Corp.*,
758 F.2d 769 (1st Cir. 1985) ....................3

*Branson v. Concord Hosp. Inc.*,
No. 217-2024-CV-00295 (N.H. Super. Apr. 28, 2025) ....................5

*Clark Sch. For Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.*,
2012 WL 6771835 (D. Mass. Dec. 26, 2012), *aff'd,* 734 F.3d 51 (1st Cir. 2013) ....................9

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part,* 2025 WL 2807673 (D. Mass. Sept. 30, 2025) ....................5

*Doe v. Partners Healthcare Sys. Inc.*,
No. 1984CV01651-BLS1 (Mass. Super. Suffolk Cnty. Dec. 7, 2020) ....................8

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................5

*Engren v. Johnson & Johnson, Inc.*,
2021 WL 4255296 (D. Mass. Sept. 17, 2021) ....................9

*Framingham Auto Sales, Inc. v. Workers' Credit Union*,
671 N.E.2d 963 (Mass. App. 1996) ....................9

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ....................4

*Hebrew Senior Life, Inc. v. Novack*,
2022 WL 17925248 (Mass. App. Ct. 2022) ....................7

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) ....................5

*Linkage Corp. v. Trustees of Boston U.*, 679 N.E.2d 191 (Mass. 1997) ....................10

*Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17 (1st Cir. 2017) ....................9

*Nationwide Book Industries, LLC v. Weiss*, 2013 WL 5740883 (D. Mass. Oct. 21, 2013) ....................9

*Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024) ....................4

*Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.,* 498 N.E.2d 1044 (Mass. 1986) ....................7

*Reyad v. Caritas Norwood Hosp.*, 2011 WL 4837278 (Mass. Super. 2011) ....................7, 8

*S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197 (D. Mass. 2016) ....................7

*Shedd v. Sturdy Mem'l Hosp.*, *Inc.*, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022) ....................8

*Trustees of Boston Univ. v. AMS Comm'ns, Inc.*, 33 F. Supp. 2d 66 (D. Mass. 1998) ....................8

*Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP (W.D. Mo. Jan. 8, 2026) ....................3

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................9

## INTRODUCTION

Plaintiffs have consented to dismissal of their ECPA claim (Count I). *See* Doc. No. 16 at 6–7.[1] Thus, this Reply is limited to responding to those arguments set forth in Plaintiffs' Opposition, which include broad pleading deficiencies that impact all of the claims in the Second Amended Complaint ("SAC"), including invasion of privacy (Count II), breach of fiduciary duty and/or common law duty of confidentiality (Count III), breach of implied contract (Count IV), unjust enrichment (Count V), and a Chapter 93A claim (Count VI).

Tellingly, nothing in the Opposition saves Plaintiffs' claims. Rather, Plaintiffs double down on the insufficient allegations of their SAC and consistently overstate the content of their allegations without any support. But despite Plaintiffs' efforts to put a gloss on their allegations, their position that their protected health information ("PHI") or other private information ("PII") was disclosed vis-à-vis usage of Emerson's website is not supported by their actual allegations. Plaintiffs' Chapter 93A claim also fails, primarily because they offer no basis to infer that Emerson's purpose in using tracking technology was for anything other than furthering its charitable mission. Plaintiffs have had plenty of chances to allege their claims clearly and fully, and have failed to do so, and the SAC should be dismissed in its entirety with prejudice.

## ARGUMENT

### I. Plaintiffs' Allegations Are Insufficient to Support Any of Their Claims, Including Invasion of Privacy, Breach of Fiduciary Duty and/or Common Law Duty of Confidentiality, Breach of Implied Contract, and Unjust Enrichment (Counts II-V).

#### A. Plaintiffs Fail to Explain How Their Allegations Plausibly Support an Inference that Any of Their Own PII or PHI Was Disclosed.

This case is about Plaintiffs. Namely, their use of Emerson's website and portal and whether their PHI or PII was disclosed through tracking technologies on those locations. Indeed, Plaintiffs

[1] All page numbers refer to those generated by the Court's CM/ECF system at the top of the document.

do not dispute that each of their claims requires plausible allegations that their own PHI or PII was disclosed. Yet, instead of referencing such allegations, Plaintiffs use six pages in their Opposition to repackage their deficient allegations, asserting they are "specific" while relying only on generic, hypothetical scenarios involving Emerson's website.

Plaintiffs each dedicate only *one* conclusory paragraph in their 78-page SAC to describing their own activities on Emerson's website. SAC ¶¶ 14–17. The other 324 paragraphs are premised entirely on generic descriptions of how tracking technology *might* work and hypothetical information about how visitors *might* use Emerson's website that has nothing to do with Plaintiffs' own activities or PHI. Plaintiffs cite to allegations that they have used Emerson's website or portal to "search for information about doctors, schedule appointments, pay for medical services, and fill out forms" (Doc. No. 16 at 10), but ignore that such an allegation contains no information about *how* each of those steps were purportedly tracked or shared with third parties (for example, by showing a URL, showing search terms, documenting a button click, or how a button would be described) not to mention which of Plaintiffs' own data was allegedly inputted and shared.

Plaintiffs attempt to overcome these deficiencies by referring to specific paragraphs in their SAC, but none of their cited paragraphs describe any specified wrongful disclosure of *Plaintiffs'* PHI or PII. *See* Doc. No. 16 at 10–12, citing SAC ¶ 18 (referring generically to "medical information" entered on Emerson's website and portals); *id.* ¶ 165 (vaguely asserting that Plaintiffs' engagement with websites was shared, such as "using the website's search bar, using the website's 'Find a Doctor' function, and typing content into online forms" without describing what information was shared or in what format); *id.* ¶ 168 (claiming information was shared between 2019-2022 from inside the Patient Gateway portal, with no reference to any information of Plaintiffs' that was shared in that manner, or what type of information was shared); *id.* ¶¶ 233–

35 (declaring, without support that various “contents” of “electronic communications” were shared). Other paragraphs Plaintiffs cite (*e.g.*. SAC ¶¶ 32–41, 53, 154, 162, 148–49) broadly allege that Emerson’s website used tracking technologies and make conclusory assertions that categories of information, like “the type of medical appointment the patient made, the date, and the specific doctor the patient was seeing” (*id.* ¶ 32) were transmitted without providing any further details or linking such allegations to activities Plaintiffs engaged in.

Plaintiffs also point to “Facebook IDs, IP addresses, cookies, device IDs, browser fingerprints, [and] geolocation,” which they assert “individually and in combination” with PHI allow Facebook and Google to affirmatively identify individuals. Doc. No. 16 at 14. First, Plaintiffs do not allege that they were registered with or logged into a Meta account so as to allow sharing of any Facebook ID (which would require agreement to Meta’s terms of use), nor that Google or Meta actually connected any web browsing history to them. Instead, they simply speculate that Google or Meta *potentially* could mine their web browsing data and then *if* they could link Plaintiffs to a specific computer, computers at Google or Meta theoretically could guess that Plaintiffs had searched for their medical conditions. Such allegations of speculative harm fail to state any claim. *See e.g., Biszko v. RIHT Fin. Corp.*, 758 F.2d 769, 771 (1st Cir. 1985) (“[w]hile plaintiffs are not required to prove their case at this point, broad allegations of speculative injury will not suffice”).

In sum, without more, the court cannot ascertain whether any of Plaintiffs’ own PHI was in fact shared, or how, and courts are rightly skeptical of this type of conclusory pleading. *See e.g.*, *Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP, Doc. No. 39 at 13 (W.D. Mo. Jan. 8, 2026) (attached as **Ex. A**) (directing plaintiffs in context of standing analysis to file supplemental brief explaining “what kind of information they allege” was conveyed to Google because allegations

similar to those here were insufficient to ascertain "legally important differences" such as whether defendant conveyed "(1) the fact that a patient accessed the patient portal, (2) the fact that a patient requested a test, (3) the fact that a patient requested a particular test, [or] (4) the results of a particular test" and whether the information could be associated with "a particular person" as opposed to an IP address); *Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (dismissing ECPA claim where plaintiff alleged she used defendant's website to "find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) ("two sentences" describing "actual engagement" with website insufficient to support any claim).

**B. Plaintiffs Cannot Rely on Browsing a Public Website to Support Their Claims.**

Nor do Plaintiffs' citations to various pages on Emerson's public website save their claims. Doc. No. 16 at 10–14. Plaintiffs argue that *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) is not binding and is inapplicable. But they misconstrue the significance of *Becerra*, which merely demonstrates the deficiency of Plaintiffs' allegations to the extent they rely on alleged tracking of ***public*** browsing information. In focusing on *Becerra*, Plaintiffs ignore the meat of Emerson's argument, which is that data disclosed by tracking technology on a public website is not "personal" nor "private." *Becerra* explains why: a website operator like Emerson cannot identify any particular user on its public website, and it does not know why any particular user visits a certain webpage, clicks a certain button, or performs a certain search. *See id.* at 807.

Thus, to the extent Plaintiffs maintain that they have sufficiently pled their PHI was disclosed because they performed searches or took other actions related to their medical treatment on Emerson's *public* website, their claims must fail. *See* Doc. No. 16 at 14–15. To the extent searches or actions were conducted on Emerson's public website, neither Emerson nor Google and

Meta would know who was searching, or why, including whether it was for their own treatment, someone else's, or simple curiosity. The same is true of scheduling, log in pages for the portal, or bill pay functions; a person may access those for any number of reasons irrelevant to seeking healthcare and all those actions take place on Emerson's *public* website. Therefore "the inference that someone [who visits those pages] is a patient is somewhat attenuated; individuals or bots who are not patients may click on the button as well, website visitors may pay bills for family members and others in their care, people may click on the link by mistake, and so forth." *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *15 n.10 (D. Mass. Aug. 29, 2025), *report and recommendation adopted in part, rejected in part,* 2025 WL 2807673 (D. Mass. Sept. 30, 2025).

Numerous courts have granted motions to dismiss similar claims on the basis that public browsing does not implicate PHI. *See* Doc. No. 12 at 14 (listing cases); *Branson v. Concord Hosp. Inc.*, No. 217-2024-CV-00295, Order on Def.'s Mot. Dismiss, at 11, 13, 16 (N.H. Super. Apr. 28, 2025) (attached as **Ex. B**) (dismissing claims under state wiretapping act, state patient privacy law, and invasion of privacy where plaintiff relied solely on hypotheticals and failed to allege with specificity what PHI he actually transmitted or how it was used); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2–3 (S.D. Ind. Sept. 24, 2024) (dismissing common-law claims because "principal theory" underlying each was transmission of PHI, but plaintiff's browsing did not relate to her health or relationship with defendant); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (dismissing breach of confidence claims to the extent based on plaintiff's searches on the public website). This Court should do the same.

### C. Plaintiffs' "Portal" Allegations Are Vague and Insufficient.

Plaintiffs' vague allegations regarding purported Emerson patient portals similarly fail. First, Plaintiffs do not acknowledge or respond to Emerson's argument that there are two distinct

portals—an Emerson operated portal and the MGB Patient Gateway. *See* Doc. No. 12 at 12–13. Instead, they simply contend that their allegations regarding MGB's Patient Gateway portal (or the Epic portal) are sufficient. Doc. No. 16 at 12–13. First, as Emerson noted, MGB's Patient Gateway Portal is not operated by Emerson and thus those allegations are meritless.[2] Doc. No. 12 at 12.

Second, Plaintiffs do not specify the technology allegedly installed in the Patient Gateway portal or describe their interactions with it. The cited paragraphs provide no details about what is claimed to have happened within the portal. Doc. No. 16 at 13. Plaintiffs refer to paragraph 56 of the SAC, which claims that "Google Firebase Code" is installed in the Epic app and is "similar" to Google Analytics, but does not specify what data the technology transmits. Paragraph 148 refers only to the "Log in" button for password-protected areas of Emerson's public website, not a patient portal. Similarly, Paragraph 162 addresses only patient portal "logins". It remains unclear what Plaintiffs intend to allege regarding the portals and their claims should be dismissed on that basis.

## II. Plaintiffs Cannot State A Claim Under Chapter 93A (Count VI).

### A. Emerson Is a Non-Profit That Acted Within its Charitable Purpose.

Plaintiffs cannot escape the truth of the matter: Emerson is a non-profit hospital and acted within its charitable purpose when allegedly deploying tracking technology on its website and portals. Indeed, Plaintiffs don't dispute that Emerson is a charitable non-profit entity. Instead, they assert that Emerson's alleged conduct was not "necessary" to operate its websites, and was done for "marketing" purposes, and thus amounts to "trade or commerce." *See* Doc. No. 16 at 16–17.

Plaintiffs claim Emerson purportedly shared PII/PHI for marketing benefits but ignore their own allegations that this technology is also utilized for evaluating a website's "functionality and

[2] Nor did Emerson utilize the MGB patient Gateway portal/Epic mobile application during the time period Plaintiffs allege, 2019–2022. If necessary, Emerson will demonstrate this through evidence later in the case.

traffic." SAC ¶ 134. Ensuring website or portal functionality, and monitoring website traffic, is unquestionably an activity undertaken "in furtherance of [Emerson's] core mission" of providing healthcare, which Massachusetts courts ubiquitously hold is not "trade or commerce." *Hebrew Senior Life, Inc. v. Novack*, 2022 WL 17925248, at *3–4 (Mass. App. Ct. 2022); *S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197, 201 (D. Mass. 2016) (same). There is no inherent conflict between Emerson marketing its services and fulfilling its non-profit mission.

Critically, the cases Plaintiffs rely on do not support their position. In *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.*, the defendant, a pro-life non-profit, offered pregnancy tests and health services, but was accused of misleading consumers into believing that it was Planned Parenthood to disrupt their business. 498 N.E.2d 1044, 1048, 1052 (Mass. 1986). The court held those actions were not "trade or commerce" despite the benefit to the defendant because its employees were "motivated" to provide such health services to further its charitable mission and did not charge a fee. *Id.* at 1052. Likewise, Emerson's use of tracking technology is motivated by delivering healthcare services and reaching those in need, not engaging in "trade or commerce," even if there are tangential economic benefits. For a nonprofit to have engaged in trade or commerce "there must be *strong indications* that the services are distributed in a business context." *Id.* at 1052 (emphasis added). These indications simply do not exist here.

Plaintiffs further rely on *Reyad v. Caritas Norwood Hosp.*, to argue their allegations are sufficient to allege that Emerson was economically motivated. 2011 WL 4837278, at *5 (Mass. Super. 2011). Yet in *Reyad*, the allegations were specific, not conclusory, and related to the intentional ouster of a doctor so that the hospital could sell and implement a new system, which was wholly focused on profit. *Id.* Here, like in *Planned Parenthood*, Emerson's motivation in using

tracking technologies was to inform patients about essential treatments, offer health education, and to promote life-saving resources within its communities, in other words to "market" its non-profit services. Emerson's motivation was not for profit like in *Reyad*, and any claims of some tangential profit are conclusory and incidental to Emerson's intent to provide outreach to its community.

Plaintiffs' efforts to establish a 93A claim by repeatedly stating that Emerson used tracking technology for "marketing benefits" is likewise undermined by their own case law, which makes clear that a transaction is not commercial in nature if it is "merely engag[ing] in the customary business necessary to meet [the nonprofit's] charitable purpose.'" *Trustees of Boston Univ. v. AMS Comm'ns, Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass. 1998). Merely because an entity uses some sort of business tool to support its services, does not mean it is engaging in trade or commerce. *See id.* (finding although nonprofit bought supplies in arm's-length transaction, it was not engaged in trade or commerce because its actions were aimed at addressing an internal organizational issue).

Emerson's use of any alleged tracking technology was incidental to its goal of advancing public health outreach and facilitating treatment delivery, rather than promoting product production or generating profit. Each case cited in Emerson's Motion supports this position and Plaintiffs fail to distinguish those cases. *See, e.g.*, *Shedd v. Sturdy Mem'l Hosp.*, *Inc.*, 2022 WL 1102524, at *7 (Mass. Super. Apr. 5, 2022) (holding operational tool used to serve hospital's communities did not rise to the level of trade or commerce); *Doe v. Partners Healthcare Sys. Inc.*, No. 1984CV01651-BLS1, Endorsement on Defs.' Mot. to Dismiss. (Mass. Super. Suffolk Cnty. Dec. 7, 2020) (reinforcing that tracking technology on healthcare entity's website that promotes education as a primary goal not trade or commerce); *All Seasons Servs., Inc. v. Commr. of Health and Hosps. of Boston*, 620 N.E.2d 778, 780 (Mass. 1993) (affirming that if nonprofit's involvement in trade or commerce is ancillary to its mission and not conducted for profit, 93A claim fails).

### B. Plaintiffs Have Failed to Allege an Unfair or Deceptive Act.

Emerson's charitable purpose aside, Plaintiffs further fail to meet the heightened pleading standard required to assert an unfair or deceptive act under Chapter 93A. First, Plaintiffs argue that they have pled "concrete deceptive representations and omissions about privacy and marketing." Doc. No. 16 at 19. But they simply point to a myriad of conclusory allegations, none of which relate to Emerson's direct conduct towards the Plaintiffs themselves. *Id.*

Plaintiffs argue that they do not need to provide "minute-by-minute browsing histories" (Doc. No. 16 at 20), but they still must demonstrate with specificity how they were deceived or misled. *See Engren v. Johnson & Johnson, Inc.*, 2021 WL 4255296, at *6 (D. Mass. Sept. 17, 2021) (plaintiff must state with specificity the "time, place, and content" of deception); *Framingham Auto Sales, Inc. v. Workers' Credit Union*, 671 N.E.2d 963, 965 (Mass. App. 1996) ("a mere breach of a legal obligation … without more, does not amount to an unfair or deceptive act" under 93A). Plaintiffs must at least allege "reasonable reliance" to support a Chapter 93A violation. *Clark Sch. For Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.*, 2012 WL 6771835, at *5 n.2 (D. Mass. Dec. 26, 2012), *aff'd,* 734 F.3d 51 (1st Cir. 2013); *see also Nationwide Book Industries, LLC v. Weiss*, 2013 WL 5740883, at *12 (D. Mass. Oct. 21, 2013) (to prevail on 93A claim "plaintiff must establish that his reliance was reasonable").

All Plaintiffs offer in support of their claim, however, are references to Emerson's Privacy Policy (Doc. No. 16 at 19–20) without meaningfully alleging that Plaintiffs were deceived by it, that they were even aware of it, nor plausibly alleging that Emerson did not comply with it (for the reasons set forth above and in Emerson's motion). Plaintiffs cannot reasonably rely on something that they never read. Plaintiffs have not adequately alleged any unfair or deceptive practices, much less with the particularity required by Rule 9(b). *See Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d

17, 21–22 (1st Cir. 2017) (citations omitted) (Rule 9(b) requires plaintiff to "specifically plead the time, place, and content" of alleged misconduct).

**C. Plaintiffs Fail to Assert Causally Related Injuries or Damages.**

Plaintiffs' Opposition fails to establish any discrete concrete harm they have suffered beyond the alleged disclosure or deception, as necessary to plead a Chapter 93A claim. Instead, Plaintiffs continue to refer to purported injuries like "deprivation of their right to privacy; release and disclosure of their personal health information; loss of control over that information; diminution in the value of their PHI/PII; and loss of the benefit of the bargain" (Doc. No. 16 at 22), but each of those are nontangible harms that do not go beyond the alleged disclosure itself.[3] Further, Plaintiffs' reliance on data breach cases are inapposite, as specific information about plaintiffs, including at least PII, was indisputably accessed by third-parties. Doc. No. 16 at 22 n.3.

**D. Plaintiffs Did Not Serve a Compliant Demand Letter.**

Last, Plaintiffs argue that their demand letter was compliant because it "details the alleged deception and unfairness" and resulting harms to Plaintiffs. Doc. No. 16 at 23–24. Not so. The demand letter, like the SAC, provided no meaningful details regarding Plaintiffs' personal experience with Emerson's website or portal, and did not even bother to discuss the Plaintiffs individually. *See* Doc. No. 12-5. Plaintiffs also did not meet this requirement for a 93A claim.

## CONCLUSION

The Second Amended Complaint should be dismissed in its entirety with prejudice.

---

[3] Plaintiffs allege that "adequately plead[ing] breach of fiduciary duty, breach of implied contract, unjust enrichment, and invasion of privacy" means that their Chapter 93A claim survives. Doc. No. 16 at 22. However, the cases cited by Plaintiffs show that pleading a separate common law or statutory claim does not establish a 93A claim. *Linkage Corp. v. Trustees of Boston U.*, 679 N.E.2d 191, 206-07 (Mass. 1997).

Dated: February 9, 2026

Respectfully submitted,

EMERSON HOSPITAL

By: /s/Lisa Oliver White
Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery M. Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

**Attorneys for Defendant Emerson Hospital**

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on February 9, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

/s/Lisa Oliver White