UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE, JAMES DOE, JOSEPH DOE, and JANE DOE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EMERSON HOSPITAL,

Defendant.

Case No. 1:25-cv-13631- RGS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RULE 59(e) & RULE 60(b) MOTION TO AMEND JUDGMENT & MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs ask this Court to vacate its dismissal of their state-law claims, grant them leave to amend to file the attached Third Amended Complaint, and remand their claims to state court under Federal Rules of Civil Procedure 59(e) and/or 60(b).

## INTRODUCTION

After Plaintiffs conceded dismissal of their only federal claim, no basis for supplemental jurisdiction over Plaintiffs' state-law claims remained. Under *Royal Canin*, the proper course was remand—not dismissal with prejudice. Plaintiffs move under Rules 59(e) and 60(b) to vacate the dismissal, grant leave to file an amended complaint asserting only state-law claims, and remand to state court.

**BACKGROUND**

When patients browse or log into a hospital's website to schedule appointments, seek treatments, or message their doctors, they expect confidentiality. Defendant Emerson Hospital promised Plaintiffs—its patients—confidentiality. It then broke that promise by transmitting patients' names, conditions, and communications to Facebook and other third parties, without their consent.

Though Plaintiffs believed that Emerson would protect their sensitive medical information, Emerson did not do so. The software that Emerson installed (the "tracking pixels") collected Plaintiffs' protected health information ("PHI") and shared it with third parties like Facebook by instantaneously capturing the information. At its core, this case is about a fundamental breach: a hospital shared its patients' medical information with advertisers. Plaintiffs originally filed this action in Massachusetts state court on October 19, 2022. Rec. Doc. 1-1 at 3. Their Complaint alleged only state-law claims. *Id.* at 40-54. Emerson moved to dismiss those claims, and the state court *denied* the motion:

**COMMONWEALTH OF MASSACHUSETTS**

**ESSEX, ss.**

**SUPERIOR COURT**
**CIVIL ACTION**
**NO. 2277CV01000**

**JOHN DOE[1]**

**vs.**

**EMERSON HOSPTIAL**

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff John Doe commenced this putative class action against defendant Emerson Hospital ("Emerson"), alleging that it used digital marketing tools on its website, including Facebook's Meta Pixel, that illegally transmitted website users' personal health information and the contents of their communications with Emerson's website to Facebook and other third parties. Based on these allegations, the First Amended Complaint ("FAC") asserts claims for breach of fiduciary duty, breach of implied contract, unjust enrichment, violation of the Massachusetts Wiretap Statute, G. L. c. 272, § 99, and invasion of privacy under G. L. c. 214, § 1B. Presently before the Court is Emerson's motion to dismiss. After a hearing and consideration of the parties' submissions, the motion is **DENIED**.

*Id.* at 122; *see also id.* at 122-133; Ex. B (state court denial of motion to dismiss).

The state court stayed the claims for nearly five months pending the Massachusetts Supreme Judicial Court's decision in *Vita v. New England Baptist Hospital*. Rec. Doc. 9 at 33-36 (state court docket report). After the *Vita* decision holding that Massachusetts Wiretap Statute claims were not available for these privacy violations and PHI disclosures resulting from healthcare providers enabling pixel tracking tools, Plaintiffs filed their Second Amended Complaint on November 3, 2025, dropping that claim. *See* Rec. Doc. 1-1 at 179; Rec. Doc. 9 at 42 (state court order allowing plaintiff leave to file an amended complaint on or before November 3, 2025).

The Second Amended Complaint raised Plaintiffs' Electronic Communications Privacy Act ("ECPA") claim under 18 U.S.C. § 2510 and state-law deceptive trade practices claim for the first time. Rec. Doc. 1-1 at 233-255. Emerson then removed Plaintiffs' claims to this Court on December 2, 2025. Rec. Doc. 1. About a month later, Emerson filed its motion to dismiss. Rec. Doc.11 & 12.

In opposition, Plaintiffs did not contest dismissal of the ECPA claim. *See* Rec. Doc. 16 & 20. In its February 11, 2026 Electronic Order, this Court allowed the motion, and dismissed all of Plaintiffs' claims. Rec. Doc. 20.

## LEGAL STANDARD

The First Circuit applies a two-step analysis to post-judgment motions for leave to amend. *See Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). First, the district court must set aside its prior judgment under either Rule 59(e) or Rule 60(b). *Fisher v. Kadant, Inc.*, 589 F.3d 505, 508-09 (1st Cir. 2009). Second, the Court examines any proposed motion for leave to amend under the liberal standard established in Federal Rule of Civil Procedure 15(a), and should grant leave to amend based on the circumstances to prevent injustice and in favor of judgment on the merits. *See Palmer*, 465 F.3d at 30-31.

## ARGUMENT

Plaintiffs respectfully request that this Court vacate its order dismissing Plaintiffs' state-law claims under Rule 59(e) and Rule 60(b), grant leave to file the attached Third Amended Complaint, and remand this matter to state court. Relief under Rule 59(e) is appropriate to correct a manifest error of law or fact. *See* Fed. R. Civ. P. 59(e); *Palmer*, 465 F.3d at 30. While generally movants cannot raise arguments that were available before judgment, in situations where the error first arises from the district court's order of dismissal itself, the request for relief does not raise

issues or arguments that "should have been made before the judgment issued." *See FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992).

The First Circuit has stated that a court should grant post-judgment relief and amendment "where the movant shows a manifest error of law," or "an error not of reasoning but apprehension." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir. 2008) (quotations omitted). Plaintiffs submit that reconsideration is warranted for the following reasons:

- First, after the uncontested dismissal of Plaintiffs' lone federal law claim under recent Supreme Court jurisprudence, no basis for supplemental jurisdiction remained.
- Second, the Court employed a heightened particularity burden akin to Rule 9(b);
- Third, Emerson's misapprehension of Plaintiffs' complaint led the Court to not credit the facts alleged regarding Plaintiffs' PHI and how it was transmitted to third parties; and
- Fourth, the Court's conclusion leads to a manifestly unjust result because it dismissed state-law claims that had previously survived a motion to dismiss in state court with prejudice, instead of allowing Plaintiffs to proceed to judgment on the merits in state court.

## I. This Court lacked supplemental jurisdiction to address Plaintiffs' state-law claims.

In *Royal Canin U.S.A., Inc. v. Wullschleger*, the Supreme Court held that where a "plaintiff eliminates the federal-law claim[] that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute [under § 1367] dissolves." 604 U.S. 22, 30-31 (2025). The First Circuit has held that where "the court dismisses the foundational federal claims, it must reassess its jurisdiction." *Camelio v. Am. Federation*, 173 F.3d 666, 672 (1st Cir. 1998). In *Camelio*, the First Circuit stated that the district court erred in exercising supplemental jurisdiction to dismiss novel state-law claims with prejudice. *Id.*

That situation occurred here, albeit in a slightly different manner—through Plaintiffs' judicial admissions abandoning their sole federal claim at the motion to dismiss stage. In the Court's Electronic Order dismissing Plaintiffs' claims, it noted at the outset that "Plaintiffs do not oppose the dismissal of th[e Electronic Communications Privacy Act] claim." Rec. Doc. 20. Under *Royal Canin*, Plaintiffs' agreed dismissal of the federal claim deprived this Court of supplemental jurisdiction over the state-law claims. Thus, this Court should vacate its prior final judgment under Rule 59(e) or Rule 60(b) and remand the remaining state-law claims back to state court. *See Royal Canin*, 604 U.S. at 30-31; *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 (1st Cir. 2005) (noting preference to use Rule 59(e) as vehicle for post-judgment relief related to "jurisdictional purposes").

## II. Rule 12(b)(6) employs a generous standard, not the exacting standard of Rule 9(b).

Under Rule 12(b)(6), a court must accept all of the plaintiff's well-pleaded facts as true *and* draw all reasonable inferences in their favor. *Irizarry v. United States*, 427 F.3d 76, 77 (1st Cir. 2005). Dismissal of a complaint is improper if the facts pleaded and inferences extended fail to establish the defendant's liability under any actionable legal theory. *See Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19-20 (1st Cir. 2004).

This Court granted complete dismissal of all claims with prejudice.[1] Even though Plaintiffs pleaded facts explaining that each of them had used public and private portals on Emerson's website, visited specific clinics as patients, and submitted personal health information that was then disclosed to Facebook, Google, and other third parties, the Court concluded that Plaintiffs had

[1] Rec. Doc. 20. Although the Court's Electronic Order was silent on the issue of prejudice, the First Circuit presumes that such a "dismissal was with prejudice." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014).

not adequately established that their "PHI was transmitted to third-party advertisers." *See* Rec. Doc. 20. The Court then declined to draw inferences in the Plaintiffs favor because it found insufficient notice to Emerson regarding what PHI it could have disclosed. *Id.*

The complaint's allegations—uncontested and specific—explain precisely how these tracking pixels work on Emerson's public and password-protected webpages. Those factual allegations describe how the tracking pixel tools harvested and collected personally identifying information and PHI—regardless of whether users were "logged in" to the password protected portal—and then disclosed Plaintiffs' identity as Emerson patients to Facebook, Google and other third parties—with the very conditions the Plaintiffs had previously searched simply by their act of accessing the patient portal. *See* Rec. Doc. 1-1 at 191.

The Second Amended Complaint contains detailed allegations of how Plaintiffs' PHI and PII were subject to disclosure via the tracking pixels. Department of Health and Human Services guidance has made clear that these technologies installed on both *public* and *private* patient websites violate HIPAA and disclose protected health information to third parties.[2] For instance, the fact that a particular person has an injury and makes an appointment with a medical provider for that injury constitutes PHI.

This error of law supports relief from the final judgment under Rules 59(e) and Rule 60(b). Plaintiffs do not raise fraud claims subject to the stricter pleading standard under Rule 9(b). Nor does the Court explain why Plaintiffs could not replead to state with more particularity the connection between their specific injuries and Emerson's conduct (even though it is not required under Rule 12(b)(6).

---

[2] *See, e.g.*, U.S. Dep't Health and Human Servs., *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed Mar. 9, 2026).

## III. Plaintiffs alleged sufficient facts to state plausible state-law claims.

Relief under Rule 59(e) or Rule 60(b) is appropriate where the court's order evinces a misapprehension or misunderstanding. *See City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health*, 46 F.4th 22, 36 (1st Cir. 2022). The Court stated in its February 11, 2026 Electronic Order that it could not infer that Emerson transmitted Plaintiffs' PHI to third parties "[b]ecause the [live pleading] only alleges that defendant has deployed AdTech on some platforms – the public portions of the website and the password-protected mobile application (i.e., not the password-protected portion of the website." *See* Rec. Doc. 20 (citing ¶ 56 of SAC).

That conclusion is inconsistent with Plaintiffs' pleadings and factual allegations. In the very same paragraph of the complaint that the Court cited, Plaintiffs alleged that Emerson has employed this on virtually all public and private webpages, *including* its password-protected patient portal. *See* Rec. Doc. 1-1 at 191. At Paragraph 148, Plaintiffs further alleged that:

> 147. Defendant also discloses patient information from across its website including (but not limited to) communications that are captured by the website's search bar, communications that are captured when a patient searches for "Services" offered by Defendant, communications made by patients using the website's Bill Pay/Financials function, communications made when patients access Defendant's patient portal, and communications made when patients are researching specific medical conditions such as COVID-19.

Rec. Doc. 1-1 at 212 (highlights added). The Court's omission of this part of the complaint impacts the entire analysis of the Electronic Order, because the Court stated that it could not "infer that plaintiffs' PHI was transmitted to third-party advertisers" and that dismissal was required because "Plaintiffs' claims[] all hinge on such an inference." Rec. Doc. 20. The tracking pixels on both

Emerson's public and private webpages collect confidential health information and personal identifiers from a captive group of its patients.

The Court concluded that Plaintiffs did not allege they logged into the password-protected website from the same IP address—which, the Court reasoned, would have linked their searches to identifying information. *See* Rec. Doc. 20. But Plaintiffs did allege facts that support that inference.

For instance, Plaintiff James Doe has used both the public website search functions *and* the password-protected patient portal to pay for medical services, view medical records and test results, and communicate with physicians regarding his gastrointestinal issues and his bicep tendon tear. Rec. Doc. 1-1 at 183. Notably, the Court did not address that Plaintiffs pleaded facts establishing that their IP addresses *and* Cookies—which are personal identifiers protected by HIPAA—were disclosed to third parties via the Google Firebase, Google Analytics, and Meta Pixel tools. That omission warrants relief from final judgment under Rule 59(e).

Additionally, Rule 59 relief is warranted because the Electronic Order did not address or affect Plaintiffs' invasion of privacy claims. *See* Rec. Doc. 1-1 at 130-31 (state court denying dismissal of claim because allegations sufficiently set out a claim for invasion of privacy under state law). Plaintiffs' invasion of privacy claim under Massachusetts General Law does not require such highly particularized pleading. *See Polay v. McMahon*, 468 Mass. 379, 382-83 (2014) (holding that an actionable claim of invasion of privacy exists from the mere act of intruding upon a plaintiff's seclusion, regardless of whether the intrusion was effective). For instance, the act of installing a camera peering into one's private home creates an actionable claim under G.L. c. 214 § 1B. *See id.*; RESTATEMENT (SECOND) OF TORTS § 652B, comment b (1977) (holding that looking into a plaintiff's window constitutes actionable intrusion upon seclusion).

Plaintiffs have adequately pleaded facts showing that Emerson's enabling of tracking pixels on public facing websites caused the disclosure of patient information regarding their doctors, ailments, test results, and communications with treating physicians to third parties. Massachusetts courts have repeatedly held that a defendant's proffered purpose for enabling the intrusion is "a question of fact not suitable for resolution on a motion to dismiss." *Polay*, 468 Mass. at 384-85 (collecting cases).

## IV. This Court should grant leave to amend to file the attached proposed complaint.

Once judgment is set aside, the Court then applies the liberal standards that amendment should freely be granted under Rule 15(a). *See Palmer*, 465 F.3d at 31.

In *Foman v. Davis*, the U.S. Supreme Court established that the Federal Rules of Civil Procedure strongly prefer decisions on the merits instead of on technicalities or form at the pleadings stage. 371 U.S. 178, 181-82 (1962). The Court held that post-judgment leave to amend should be freely given when justice requires under the liberal standard of Rule 15(a). *Id.* at 182. Where, as here, none of the reasons to deny leave to amend are present: courts should reopen the case and allow the Plaintiffs' claims to advance to judgment on the merits. *See id.*

The *Foman* factors include: "undue delay, bad faith, futility, [unfair prejudice to nonmovant,] and the absence of due diligence." *Palmer*, 465 F.3d at 30. First, there has been no undue delay, bad faith, or absence of due diligence in requesting leave to amend the complaint. Plaintiffs had a good faith belief (and still do believe) that their Second Amended Complaint sufficiently states valid claims for invasion of privacy, breach of implied contract, breach of fiduciary duty of confidentiality, unjust enrichment, and unfair and deceptive trade practices under Massachusetts state law. These claims survived dismissal once before in state court. *See* Rec. Doc. 1-1 at 122-133.

There is also no prejudice to Emerson for allowing this amendment. The "unfair prejudice" contemplated in *Foman* results where a party seeks leave to amend on the eve of trial, where doing so presents substantial harm in requiring the nonmovant to defend new theories or causes of action for the first time after the close of discovery. *See Quaker S. Oil Ref. Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1517-18 (1st Cir. 1989) (holding delay and prejudice apparent when party waited until "[o]nly two months remained in an already extended *discovery period*[] and [nonmovant] was obliged to move for summary judgment within three weeks, or waive the chance").

The attached proposed amended complaint contains no new claims, only the state-law claims that had previously survived a motion to dismiss in state court. Additionally, this Court had not issued a scheduling order in this case, and Emerson will have ample opportunity to seek discovery and summary judgment on these claims before proceeding to trial on the merits.

Plaintiffs' last amendment occurred only four months ago, and the proposed complaint adds no new theories or causes of action. Simply put, there is no prejudice to Emerson in allowing these plausible state-law claims to proceed to testing on their merits. Under *Foman* and Rule 15(a), this Court should grant Plaintiffs' leave to amend.

## V. Following leave to amend, remand is required under *Royal Canin* and *Gibbs*.

In *United Mine Workers v. Gibbs*, the Supreme Court stated that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. 715, 726 (1966). In *Desjardins v. Willard*, the First Circuit applied that standard after a district court dismissed state-law claims involving complex, developing issues with prejudice and held that a district court should vacate its dismissal and remand to state court after all federal claims are dismissed. 777 F.3d 43, 45-46 (1st Cir. 2015). The same should occur here.

Plaintiffs attach their Proposed Third Amended Complaint to this Motion. *See* Ex. A. This Complaint raises only four Massachusetts state-law claims. Under *Royal Canin*, a plaintiff's amended complaint deleting its lone federal claim eliminates supplemental jurisdiction under § 1367. 604 U.S. at 40-41. These complex state-law issues would benefit from percolation and full adjudication on the merits in state court. *See Desjardins*, 777 F.3d at 45-46.

## CONCLUSION

Plaintiffs request that the Court grant their Motion to Amend Judgment and Motion for Leave to Amend, allow Plaintiffs to file their attached Proposed Third Amended Complaint, and then remand the state-law claims back to state court. Denial of this motion would amount to manifest prejudice and constitute a manifest error of law.

**Respectfully submitted,**

**COUNSEL FOR PLAINTIFFS, JOHN DOE, JAMES DOE, JOSEPH DOE, and JANE DOE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

*/s/ Brett R. Corson*
J. Tucker Merrigan, BBO# 681627
Ryan M. Hawkins, BBO# 686289
Brett R. Corson, BBO# 677644
**SWEENEY MERRIGAN LAW**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001 / Fax: (617) 357-9001
tucker@sweeneymerrigan.com
rmh@sweeneymerrigan.com
brc@sweeneymerrigan.com

Foster Johnson *
Joe Ahmad *
David Warden *
Nathan Campbell *
Justin C. Kenney, BBO No. 706672
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010

Tel: (713) 655-1101 / Fax: (713) 655-0062
fjohnson@azalaw.com
dwarden@azalaw.com
ncampbell@azalaw.com
cgustafson@azalaw.com
jkenney@azalaw.com

Seth A. Meyer *
Alex Dravillas *
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5226
sam@kellerpostman.com
adj@kellerpostman.com

**Pro Hac Vice Forthcoming*

**CERTIFICATE OF SERVICE**

I certify that on March 11, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brett R. Corson*
Brett R. Corson